■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MANUEL JACKSON, Appellant.—Judgment, Supreme Court, New York County (Richard Andrias, J., at plea and sentence; James Leff, J., at *Mapp* and *Huntley* Hearing), entered April 4, 1990, convicting defendant, upon his plea of guilty, to the crime of criminal possession of a weapon in the third degree (Penal Law § 265.02 [4]), and sentencing him, as a persistent felony offender, to an indeterminate term of imprisonment of from six years to life, is affirmed.

During the evening of August 18, 1989, Mr. Manuel Jackson (defendant) was arrested for the unlawful possession of a loaded gun. Thereafter, by indictment, filed September 7, 1989, a New York County Grand Jury charged defendant with committing the crime of criminal possession of a weapon in the third degree, a class D felony.

Following indictment, the defendant entered a plea of not guilty, and thereafter he moved to suppress statements, a .38 caliber handgun, and a quantity of marijuana.

In January 1990, a *Mapp* and *Huntley* Hearing commenced before Justice James Leff. At that Hearing three New York City Police Officers testified for the People.

Officer Kevin Sherlock (Officer Sherlock) testified that, on August 18, 1989, at 10:26 P.M., while on radio motor patrol, in uniform, with a partner, he "received a * * * message [911 tape] on the radio about an abduction that had taken place [in New York County] on West 125th Street on Morningside Avenue and [three people] were in a * * * gray Volvo heading downtown on Morningside Avenue and the call also stated the person in the back was tied up wearing a yellow shirt". When that transmission was received, Officer Sherlock's vehicle was traveling on 117th Street, westbound, toward Morningside Avenue, and Officer Sherlock stated "as we got to Morningside Avenue a car fitting the description passed by us at which time we made a left and proceeded after the vehicle and at which time I observed what looked to be three occupants in the car, two people sitting in the front and one in the back wearing a yellow orange shirt, seemed to be slumped over at which point we followed the car".

Further, Officer Sherlock testified that, by radio, he notified

police central that he had seen "a car fitting the description and I'm following it". Thereafter, he put on the turret lights, and stopped the subject vehicle in the vicinity of 116th Street and Seventh Avenue. Before approaching that vehicle, Officer Sherlock waited a couple of seconds, until several other police units, consisting of two scooters and a van, arrived at the scene.

Officer Sherlock approached the driver's side of the suspicious vehicle, asked the operator for his license and registration, and then requested him "to exit the vehicle so I could ask him if he knew the occupant in back of the car [and the operator] stated * * * it [sic] was a friend of his". Officer Sherlock then testified that "[a]t this point, other officers on the other side of the car asked the other occupants, the one in the front [passenger seat, later identified as the defendant], one in the back, to exit the car and they both exited the car and while I was standing there I smelled [the] odor of angel dust, P.C.P., reeking from the car and from the driver. The driver seemed like he was under the influence of it. His eyes were glassy and I smelt strong odor coming from the car and off of him". Thereafter, Sergeant Robert Rivera (Sergeant Rivera) instructed Officer Sherlock to arrest the driver of the subject vehicle for violation of the laws, relating to the possession of controlled substances.

Sergeant Rivera testified that, on August 18, 1989, he was the community patrol officer sergeant, and, after arriving at the scene of the incident, in uniform, he, *inter alia,* directed all of the police officers present "for their own safety to keep an eye on everybody". Thereafter, Sergeant Rivera stated that he saw the defendant seated in the front passenger seat of the subject vehicle, and that Sergeant Rivera "picked up a blue and white plastic bag that was alongside the [occupied] passenger seat in the front part of the car". Further, Sergeant Rivera testified that he held up that plastic bag, shined his flashlight through it, and, after concluding it contained marijuana, he requested the defendant to exit that vehicle. Defendant complied, and then Sergeant Rivera directed Officer Pablo Peralta (Officer Peralta) to arrest defendant, which he did.

Officer Peralta testified that, during a search of the defendant, incident to that arrest, he recovered a loaded .38 caliber black handgun. Also, Officer Peralta stated, that prior to the arrest, he instructed defendant not to move, and defendant replied "I'm not stupid. I'm not going to do anything".

While in custody, defendant was taken to the Complaint

Room, located at 100 Centre Street, Manhattan, where, in the presence of an Assistant District Attorney, Officer Sherlock testified he gave defendant the *Miranda* warnings, and, after waiving them, defendant stated "if they find a handgun, you shouldn't go crazy because everybody will see it and know that you have it".

Marked in evidence at the Hearing as People's exhibits were: the 911 tape, the plastic package found next to defendant in the subject vehicle, the handgun, and a copy of defendant's statement, made in the Complaint Room.

Defendant presented no evidence.

After hearing the testimony, observing the demeanor of the witnesses, and examining the exhibits in evidence, the Hearing Court (James Leff, J.) denied the motion to suppress the gun. Subsequently, defendant pleaded guilty, before Justice Andrias, to the crime of criminal possession of a weapon in the third degree, and was sentenced, as mentioned *supra*. Defendant appeals from the denial of the suppression motion.

Our examination of the facts indicates that the police stopped the subject vehicle, after receiving information from a 911 operator that it was involved in an abduction, which is a serious felony. Further, the facts indicate that Officer Sherlock detected the odor of marijuana and P.C.P. coming from that vehicle and the driver, and Sergeant Rivera testified that, based upon his experience, he concluded that the plastic bag he found next to the defendant contained marijuana.

The law is well settled "that the police may stop an automobile and frisk its occupants when they have a reasonable suspicion of criminal activity" *(People v Coutin,* 168 AD2d 269, 272 [1st Dept 1990], *lv granted* 77 NY2d 846 [1991]). Further, the Court of Appeals has held that a determination as to whether police conduct is reasonable rests "on articulable facts, credible objective evidence, and the rational inferences that flow therefrom *(see, e.g., People v De Bour,* 40 NY2d 210, 223 * * * *People v Cantor,* 36 NY2d 106, 113 * * *)" *(People v Hicks,* 68 NY2d 234, 243 [1986]).

Applying the legal authority, *supra,* to the facts, we find that the police conduct was reasonable, based upon the "articulable facts, credible objective evidence, and the rational inferences that flow therefrom" *(People v Hicks, supra,* at 243).

Significantly, the dissent concedes *(see,* dissent at 758-759) "[i]t is clear that the police had a legitimate reason to stop the vehicle * * * the totality of the facts warranted a stop of the vehicle."

Although the dissent points out an inconsistency in Sergeant Rivera's testimony, "as to whether he found marijuana the first or second time he picked up the bag" *(see, dissent,* at 755), the Hearing Court, who heard the testimony and observed the demeanor of that witness, decided that there was no important significance to that inconsistency, since it found that there was probable cause to arrest defendant. We have stated that "much weight is to be accorded the determination of the suppression court with its peculiar advantage of having seen and heard the witnesses *(People v Prochilo,* 41 NY2d 759, 761)" *(People v Cruz,* 158 AD2d 293 [1st Dept 1990], *lv denied* 76 NY2d 733 [1990]). Based upon our review of the record, we find no justification to "interfere with the hearing court's factual findings" *(People v Cruz, supra).*

To support its position, the dissent cites the case of *People v Torres* (74 NY2d 224 [1989]), where a majority of the Court of Appeals held that the police were not justified in searching a shoulder bag, containing a gun. After examining that case, we find the dissent's reliance on it to be misplaced, since its facts are substantially different from the facts in the instant case.

We have considered the other contentions of the defendant, and find them to be without merit.

Accordingly, we affirm the judgment of conviction. Concur—Sullivan, J. P., Kupferman and Ross, JJ.

Rosenberger and Smith, JJ., dissent in a memorandum by Smith, J., as follows: Because the evidence shows that the discovery of a gun on the person of the defendant resulted from an illegal search of the car and an illegal arrest following the finding of marijuana, I would reverse and dismiss the indictment.

The defendant was indicted for the criminal possession of a weapon in the third degree in violation of Penal Law § 265.02 (4). He moved to suppress the gun.

At the hearing on the motion to suppress, there were three police witnesses. The defendant did not testify.

Police Officer Kevin Sherlock was the first witness. On August 18, 1989, at about 10:26 P.M., Officer Sherlock and his partner, Officer Galcheski (who did not testify), were in uniform on routine motor patrol in New York County. Officer Sherlock received a radio run of an abduction at 125th Street and Morningside Avenue. The person abducted was stated to be wearing a yellow shirt and to be in the back seat of a gray Volvo heading downtown on Morningside Avenue. The vehicle was said to contain two other persons in the front seat.

The car in which Officer Sherlock and his partner were riding was headed westbound on 117th Street toward Morningside Avenue. At said avenue they saw a vehicle fitting the description of the car heading south. The officers turned left on Morningside Avenue, followed the car down Morningside Avenue to 116th Street and then turned left behind the Volvo. The car contained three persons. The one in the back was wearing a "yellow orange shirt" and seemed to be "slumped over."

Officer Sherlock notified central headquarters that he would pull the car over. He did so and waited for other units to arrive.

After the other units appeared, Officer Sherlock approached the driver of the vehicle, Glen Diggs, with his gun drawn and asked for his license and registration. These items were produced and were in proper order. The officer asked the driver if he knew the person in the back. The driver stated that the man was a friend. Officer Sherlock also testified to smelling angel dust in the car and on the driver. He stated: "At this point, other officers on the other side of the car asked the other occupants, the one in the front, one in the back, to exit the car and they both exited the car and while I was standing there I smelled [the] odor of angel dust, P.C.P. reeking from the car and from the driver. The driver seemed like he was under the influence of it. His eyes were glassy and I smelt strong odor coming from the car and off of him." After the driver and others were removed from the car, Sergeant Rivera said, "Marijuana, lock him up."

Sergeant Robert Rivera was the second witness. He arrived at the scene after Officer Sherlock radioed that he would pull the car over. When Sergeant Rivera arrived, there were four or five radio cars present and 12 to 14 officers. Sergeant Rivera testified that he picked up a plastic bag, looked inside, found what he believed to be marijuana and directed the arrest of the defendant and his companions. He also testified that he first pointed his flashlight at the bag, observed what he thought to be marijuana, opened the bag and then ordered the arrest of the persons in the car. Finally, the officer was inconsistent as to whether he found marijuana the first or second time he picked up the bag. Specifically, on direct Sergeant Rivera testified as follows:

"Q. What action did you take, if any, when you arrived?

"A. I looked in the vehicle. I picked up a blue and white plastic bag that was alongside the passenger seat in the front

part of the car. I looked in the bag itself. I looked through the bag. There was what I believed to be marijuana. I then asked the male to step out of the vehicle.

"Q. Can you describe who that male was?

"A. The man sitting right there.

"Q. The defendant?

"A. Yes."

On cross-examination Sergeant Rivera testified as follows:

"Q. Then what?

"A. I looked in the front seat passenger side of the vehicle where I observed a bag and inside the bag was what I believed to be marijuana. I then directed the officers to place the individuals in the vehicle under arrest.

"Q. I am going to show you what has been entered in evidence as People's 4 and ask you to look at what is inside that bag.

"A. Appears to be a plastic bag, white and blue in color and a number of bags of clear plastic containing marijuana.

"Q. The clear plastic bags containing what you describe as marijuana, when you first secured these objects were the clear plastic bags inside the white plastic bag?

"A. Yes they were.

"Q. They were all inside?

"A. Yes sir.

"Q. That white plastic bag is not transparent, is it?

"A. No it is not.

"Q. You couldn't see through the white plastic bag to determine what the contents were when you looked into the car, could you?

"A. I picked up the bag and was able to see with my flashlight what was in the bag * * *

"Q. You looked inside with your flashlight, is that correct?

"A. Yes.

"Q. And with your flashlight you observed this white bag on the passenger side seat, is that correct?

"A. On the passenger side floor.

"Q. Mr. Jackson was sitting in that same vicinity with his legs in the well on the passenger side of the vehicle?

"A. Yes he was.

"Q. You were able to see in and see the white plastic bag, is that correct?

"A. Yes sir, that is correct.

"Q. That was next to the door, the white plastic bag?

"A. No, it was next to the seat between the seat and the door.

"Q. I'm not sure what you are describing. If I am sitting in a car like this and the door is to my right, do you mean actually between the seat and the door or do you mean here on the floor between the person's feet and the door?

"A. It would be on the floor just between where your right foot is and where the legs of the chair would be.

"Q. Between the door and the passenger's feet or legs on the floor was this white plastic bag, is that correct?

"A. Yes.

"Q. You saw that looking in the window with your flashlight?

"A. Looking into the car.

"Q. But you didn't know what was in it when you looked in with your flashlight?

"A. No.

"Q. Before you can determine what was in it, you had to open the car door, go into the car door, pick up the bag, open the bag and look in it; isn't that right?

"A. I picked the bag up through the door. My head was through the window.

"Q. You reached in through the window of the car, picked up this bag took it out of the car, opened the bag and examined it; is that correct?

"A. No it is not correct.

"Q. Tell me what you did?

"A. I picked up the bag, I had my flashlight in my left hand. I looked through the bag. I then placed the bag back down, opened the car door, removed the occupant from the front seat, looked through the bag again and directed the officers to place the occupant under arrest.

"Q. It was the second time you looked in the bag after you removed the passenger from the vehicle that you saw that what you had was marijuana, is that correct?

"A. That is correct.

"Q. At that point when you did this second inspection of the bag and determined it was to your experienced eye, marijuana, you then directed that Mr. Jackson be placed under arrest, is that correct?

"A. That is correct."

Sergeant Rivera then contradicted himself as to whether he observed the marijuana the first or second time he picked up the bag.

"Q. One addition *[sic]* question. Sergeant Rivera, when you first saw the bag in the passenger seat, what did you do?

"A. I picked up the bag.

"Q. Did you examine it at that point?

"A. Yes.

"Q. Did you determine what it was at that point?

"A. Yes.

"Q. What did you determine it to be?

"MR. COOPER: All asked and answered.

"THE COURT: Overruled.

"Q. What did you determine it to be?

"A. I believed it to be marijuana.

"MS. HEHER: I have no further questions.

[RECROSS EXAMINATION BY MR. COOPER:]

"Q. The fact is sergeant that you didn't determine it was marijuana when you picked the bag up, isn't that right? You picked it up once, then you took Mr. Jackson out of the car, then you examined it a second time and that's when you made the determination that it was marijuana, isn't that correct?

"A. No, that is not correct.

"Q. Sergeant, did you not just testify but a mere five minutes ago that you looked into the front passenger side of the car, you saw a white bag, the contents of which you could not determine from the observation you were making from outside the car, that you reached in the window, you reached down, you picked up the bag, you examined it with your flashlight, you still hadn't determined what was in it. You told Mr. Jackson to get out of the vehicle. After he got out of the vehicle, you examined the contents of the white bag again and this time you determined that it was marijuana and said to other officers, place these men under arrest. Isn't that what you told us but five minutes ago?

"A. No sir, that is not correct."

Police Officer Pablo Peralta was the third witness. He testified that following Sergeant Rivera's direction to arrest the three men, he, Peralta, frisked the defendant. He felt a gun in the back of his waistband and removed it.

It is clear that the police had a legitimate reason to stop the

vehicle. Even though it turned out that the persons in the car were not involved in an abduction and even though the color of the car stopped, blue rather than gray, differed from the description of the reported abduction vehicle, the totality of the facts warranted a stop of the vehicle.

Once the vehicle was stopped, however, the license and registration checked and the persons questioned, it was clear that there was no abduction.

The evidence here shows that the sergeant proceeded to search the vehicle without any probable cause to do so. Sergeant Rivera made no mention of smelling angel dust or marijuana. Thus Officer Sherlock's smelling of angel dust did not provide a basis for Sergeant Rivera's search of the bag. Moreover, Sergeant Rivera made no reference to picking up the bag for reasons of safety.

This case is similar to *People v Torres* (74 NY2d 224 [1989]). There the police received an anonymous tip that a person wanted for murder was in a barber shop on 116th Street and Lexington Avenue in Manhattan. He was reported to be carrying a bag with a gun. Two detectives in plain clothes went to the area, saw a man fitting the description of the person sought leave the barber shop with a companion and enter a car. With their guns drawn, the detectives approached the car and ordered the two men out. Both men were frisked. One detective reached into the car and took out the bag. Noticing the weight of the bag, the officer felt the outline of a gun. A revolver was found inside. The Court of Appeals held that the search of the bag was improper and suppressed the gun.

Because no valid reason was shown for the search of the bag, the police had no probable cause to arrest the three men or to search the defendant as an incident to that arrest.